(43 App. Div. 422.)

OLSEN v. STARIN.

(Supreme Court, Appellate Division, Second Department. October 3, 1899.)

1. MASTER AND SERVANT—PERSONAL INJURY—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.

A bark lay at a pier in defendant's shipyard, loaded with lumber to be delivered to defendant. It was unloaded through a port hole by a rope and tackle, the power being supplied by a steam winch in the yard. The line did not lead straight from the vessel to the winch; its direction being changed by passing it through a pulley or block attached to an iron hook fastened in the wharf, and from there to the winch. Plaintiff was employed in piling the lumber after its removal in the space lying in the bend of the line, and when a draft of lumber became "jammed" or wedged on the vessel, the winch not being stopped in time, the iron·hook straightened out, and plaintiff was injured by the block striking him as it and the rope were drawn inwards. *Held*, whether he was guilty of contributory negligence in occupying a position within the bend of the line was for the jury, as it involved danger if any of the appliances should fail or the rope should break.

2. SAME—FELLOW SERVANTS.

One employed by the owner of a shipyard in operating a steam winch supplying power with which to unload lumber from a ship by means of a rope and tackle running from the wharf to the ship, and a workman also employed by the owner of the yard in piling the lumber as it is unloaded, are fellow servants, and their employer is not liable for an injury to the latter due to the negligence of the former.

3. SAME—APPLIANCE FOR WHICH EMPLOYER IS LIABLE.

In unloading a vessel in a shipyard, an iron hook was fastened by the owner of the yard to the wharf, to hold a rope and tackle used for the work, running from the ship to the wharf. *Held*, that the hook must be considered an appliance used in the business, for reasonable care in maintaining the security of which the owner of the yard, for whom the work was done, was responsible to his employés.

4. SAME—EVIDENCE OF DEFECTIVE APPLIANCE.

A hook fastened to a wharf, and used to hold a rope and pulley for unloading a vessel, gave way under an extraordinary strain, and injured a workman. In an action for the injury the only evidence of a defect was the testimony of a fellow workman, who said that he looked at the hook after the accident as it lay on the wharf. He said there was an old

spot on it which looked like an old crack across the grain, but that he could not say for sure. He did not measure it, but judged it to be about half an inch deep. On cross-examination he reduced the depth of the crack to a quarter of an inch, and said that he did not handle it, and that he did not look at it closer than five feet. *Held* insufficient to satisfy the burden of proving the defect, such proof constituting at most only a scintilla of evidence.

5. SAME—EXTRAORDINARY STRAIN—PRESUMPTION OF DEFECT.

No such presumption arises as to a defect in an appliance which gives way under an extraordinary strain, as in a case where it fails in the ordinary conduct of the work for which it is being used.

Appeal from trial term.

Action by Andrew Olsen against John H. Starin. Plaintiff was nonsuited, and he appeals. Affirmed.

Argued before CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

Gilbert D. Lamb, for appellant.

Everett P. Wheeler (John S. Woodruff, on the brief), for respondent.

CULLEN, J. The action is to recover damages for personal injuries alleged to have been inflicted by the negligence of the defendant, in whose employ the plaintiff was at the time. The defendant maintained a shipyard. A bark lay at a pier in the yard, loaded with lumber consigned and to be delivered to the defendant. The following was the method of unloading the vessel: The lumber was hauled through a port or opening in the bark, by a rope or tackle, the power being supplied by a steam winch in defendant's yard. The line did not lead in a straight course from the vessel to the winch, but, to change its direction, it was passed through a pulley or block attached to an iron hook fastened in the wharf, and then from the pulley to the winch. Therefore at the place where the pulley and hook were located there was a bend in the line. The plaintiff was employed in piling the lumber, after it was removed from the vessel, in the space lying in the bight or bend of the line. The work on the vessel was being carried on by a stevedore, who seems to have been an independent contractor. The man at the winch was an employé of the defendant, though it is claimed that on this occasion he was in the service of the stevedore. The work had been carried on for some time, when a draft of lumber became "jammed" or wedged on the vessel. The winch not being stopped in time, the iron hook on the wharf to which the pulley was fastened straightened out, and the block and ropes were drawn inward. The plaintiff was struck by the block, and received severe injuries.

The question of the plaintiff's contributory negligence in occupying the position within the bight of the line was clearly one for the jury. No doubt, the place involved danger in case any of the appliances should fail or the rope break. The defendant's foreman testified that he warned the plaintiff not to occupy this position when the draft was being hauled out of the ship. This statement, however, the plaintiff denied, and testified that it was necessary for him to remain within the bight of the line to do his work. The conflict of evidence presented a question for the jury.

On the question of the defendant's negligence, it is immaterial whether the winchman was in the defendant's employ or in that of the stevedore. If the latter, of course the defendant would not be liable for his negligence; if the former, his negligence would be that of a fellow servant, for which the master would not be responsible. On this branch of the case the question is narrowed down to the defective condition of the hook. We think that this hook must be considered as an appliance furnished by the defendant in the conduct of his business, for reasonable care in maintaining the security of which he was responsible to his employés. The only evidence to show that there was anything defective in the hook is that of a fellow workman of the plaintiff, who was engaged with him in piling the lumber. This witness testified that after the accident he looked at the hook as it lay on the wharf, and "there was an old spot in one side of it, and it looks like an old crack, but I can't say for sure, but it looks like an old crack. There was an old spot on one side of it. This old spot looked like an old crack. It was across the grain. I never measured the crack. The crack was, in my judgment, about half an inch deep." On cross-examination it appeared that the witness did not handle the hook or examine it, and that his face or eyes were not at any time closer to it than five feet. He also reduced the depth of the crack to a quarter of an inch. It appeared by the testimony of three witnesses, also employés of the defendant, who examined the hook, that after it had straightened out there appeared a crack of from a quarter to a half inch in depth, which was bright, clean, and fresh. The hook had been for some time in use, and two days before the accident had been returned to the blacksmith's shop to be closed up. There the hook was heated and bent. The blacksmith testified that the material was the best, and the hook at the time he finished his work on it was without flaw or fault. As these witnesses were in the defendant's employ, their statements were not necessarily conclusive upon the jury. We also appreciate the rule, which this court has so strenuously insisted upon, that where there is a real conflict of evidence a case must be submitted to the jury, and the fact that the testimony on one side vastly preponderates does not justify the court in disposing of the case itself. Luhrs v. Railroad Co., 13 App. Div. 126, 42 N. Y. Supp. 1101. But the burden of proof was on the plaintiff to show affirmatively the defect in the hook, as one step in establishing the defendant's negligence. The only testimony to make out this fact is that first quoted, and the question is whether it is sufficient for the purpose. We think it is not. The witness does not positively testify that the crack was an old one, though this we do not regard as of controlling importance. But it is plain that the judgment or testimony of a person as to the appearance of a crack from a quarter to a half inch in depth, submitted to no close inspection, and seen at no time at a less distance than five feet, has no substantial weight. Such proof constitutes at most only a scintilla of evidence, and does not satisfy the burden which the law imposed on the plaintiff. The case would be very much stronger for the plaintiff had the hook broken in the ordinary work of unloading the vessel. At the time of the accident, the draft having become wedged on the

vessel, if the power of the winch was great enough something must have broken or given way. It became a question whether the hook, the block, or the rope should first break. The question was solved in this case by the breaking of the hook. From the failure of an appliance under these circumstances no such presumption as to its insufficiency or defective condition can be indulged in, as in a case where the appliance fails in the ordinary conduct of the work. Here the hook had served its purpose for a day and a half, and had failed only when the extraordinary strain was put upon it. On the whole, we are of opinion that the evidence was not sufficient to justify the submission of the case to the jury, and that the decision of the learned trial judge was correct.

The judgment appealed from should be affirmed, with costs. All concur.